Marc Zemel
SMITH & LOWNEY, PLLC
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | | |
|---|---|---|
| WASTE ACTION PROJECT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | COMPLAINT |
| | ) | |
| WILLIS ENTERPRISES, INC. | ) | |
| (MOON ISLAND FACILITY), | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## I.    INTRODUCTION

1.      This action is a citizen suit brought under Section 505 of the Clean Water Act ("CWA") as amended, 33 U.S.C. § 1365.  Plaintiff Waste Action Project seeks a declaratory judgment, injunctive relief, the imposition of civil penalties, and the award of costs, including attorneys' and expert witnesses' fees, for Defendant Willis Enterprises, Inc.'s repeated and ongoing violations of Sections 301(a) and 402 of the CWA, 33 U.S.C. §§ 1311(a) and 1342, and the terms and conditions of its National Pollutant Discharge Elimination System ("NPDES") permit authorizing discharges of pollutants from Defendant's Hoquiam, Washington, facility to navigable waters.

COMPLAINT - 1

## II.    JURISDICTION AND VENUE

2.      The Court has subject matter jurisdiction under Section 505(a) of the CWA, 33 U.S.C. § 1365(a).  The relief requested herein is authorized by 33 U.S.C. §§ 1319(d) and 1365(a).

3.      Under Section 505 (b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A), Plaintiff notified Defendant of Defendant's violations of the CWA and of Plaintiff's intent to sue under the CWA by letter dated and postmarked June 23, 2020 and delivered June 25, 2020 ("Notice Letter").  A copy of the Notice Letter is attached to this complaint as Exhibit 1.  The allegations in the Notice Letter are incorporated herein by this reference.  Plaintiff notified Defendant's Registered Agent, the Administrator of the United States Environmental Protection Agency ("USEPA"), the Administrator of USEPA Region 10, and the Director of the Washington Department of Ecology ("WDOE") of its intent to sue Defendant by mailing copies of the Notice Letter to these officials on June 23, 2020.

4.      More than sixty days have passed since the notice was served and the violations complained of in the Notice Letter are continuing or are reasonably likely to continue to occur. Defendant is in violation of its NPDES permit and the CWA.  Neither the USEPA nor the WDOE has commenced any action constituting diligent prosecution to redress these violations.

5.      The source of the violations complained of is located in Grays Harbor County, Washington, within the Western District of Washington, and venue is therefore appropriate in the Western District of Washington pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1).

COMPLAINT - 2

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

### III.   PARTIES

6.      Plaintiff, Waste Action Project, is suing on behalf of itself and its member(s). Waste Action Project is a non-profit corporation organized under the laws of the State of Washington.  Waste Action Project is a membership organization and has at least one member who is injured by Defendant's violations.  Waste Action Project is dedicated to protecting and preserving the environment of Washington State, especially the quality of its waters.

7.      Plaintiff has representational standing to bring this action.  Waste Action Project's members are reasonably concerned about the effects of discharges of pollutants, including stormwater and wood chips from Defendant's facility, on aquatic species and wildlife that Plaintiff's members observe, study and enjoy.  Waste Action Project's members are further concerned about the effect of discharges from Defendant's facility on human health.  In addition, discharges from Defendant's facility lessen Waste Action Project's members' aesthetic enjoyment of nearby areas.  Waste Action Project's members' concerns about the effects of Defendant's discharges are aggravated by Defendant's failure to record and report information about its discharges and pollution controls.  The recreational, economic, aesthetic and/or health interests of Waste Action Project and its member(s) have been, are being, and will be adversely affected by Defendant's violations of the CWA.  The relief sought in this lawsuit can redress the injuries to these interests.

8.      Plaintiff has organizational standing to bring this action.  Waste Action Project has been actively engaged in a variety of educational and advocacy efforts to improve water quality and to address sources of water quality degradation in the waters of western Washington, including Grays Harbor.  Defendant has failed to fulfill monitoring, recordkeeping, reporting and planning requirements, among others, necessary for compliance with its NPDES permit and the

COMPLAINT - 3

CWA.  As a result, Waste Action Project is deprived of information necessary to properly serve its members by providing information and taking appropriate action to advance its mission. Waste Action Project's efforts to educate and advocate for greater environmental protection for the benefit of its members are also precluded.  Finally, Waste Action Project and the public are deprived of information that influences members of the public to become members of Waste Action Project, thereby reducing Waste Action Project's membership numbers.  Thus, Waste Action Project's organizational interests have been adversely affected by Defendant's violations. These injuries are fairly traceable to Defendant's violations and redressable by the Court.

9.     Defendant is a corporation authorized to conduct business under the laws of the State of Washington.

10.    Defendant owns and operates a facility used for log storage and chipping, located at or about 400 Airport Way SW, Hoquiam, WA 98550, including contiguous or adjacent properties owned or operated by Defendant (the "facility" or "Moon Island facility").

### IV.    LEGAL BACKGROUND

11.    Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of pollutants by any person, unless in compliance with the provisions of the CWA.  Section 301(a) prohibits, inter alia, such discharges not authorized by, or in violation of, the terms of a NPDES permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

12.    The State of Washington has established a federally approved state NPDES program administered by the WDOE.  Wash. Rev. Code § 90.48.260; Wash. Admin. Code ch. 173-220.  This program was approved by the Administrator of the USEPA pursuant to 33 U.S.C. § 1342(b).

COMPLAINT - 4

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

13.     Pursuant to Section 402(a) of the CWA, 33 U.S.C. § 1342(a), the WDOE has repeatedly issued the Industrial Stormwater General Permit, most recently on November 20, 2019, (the "General Permit" or Permit).  The General Permit, in its various iterations since its first issuance in 1993 containing comparable requirements, authorizes those that obtain coverage under the General Permit to discharge stormwater, a pollutant under the CWA, and other pollutants contained in the stormwater to the waters of the State subject to certain terms and conditions.

14.     The General Permit imposes certain terms and conditions on those covered thereby, including monitoring and sampling of discharges, reporting and recordkeeping requirements.  To reduce and eliminate pollutant concentrations in stormwater discharges, the General Permit requires, among other things, that Permittees develop and implement best management practices ("BMPs") and a Stormwater Pollution Prevention Plan ("SWPPP"), conduct representative sampling for pollutant concentrations, and apply all known and reasonable methods of prevention, control and treatment ("AKART") to discharges.  When a Permittee's stormwater discharge exceeds benchmark values for concentrations of certain pollutants, the General Permit requires the Permittee to complete the applicable Level 1, 2, or 3 corrective action requirements.  The specific terms and conditions of the General Permit are described in detail in the Notice Letter, attached hereto as Exhibit 1, and incorporated herein by this reference.

15.     Waste Action Project filed a complaint on February 6, 2012 against Willis Enterprises, Inc. (amended August 30, 2012) for violations of the General Permit at the Moon Island facility.  *See* W.D. Wash. no. 3:12-cv-05096.  The Court entered a Consent Decree in that matter on October 21, 2013, which required injunctive relief and a payment for a supplemental

COMPLAINT - 5

environmental benefit project (SEP), among other relief.  That Consent Decree terminated on or about October 21, 2015.  Defendant is once again violating the General Permit.

## V.     FACTS

16.     Pursuant to Condition S2 of the General Permit, Defendant filed with the WDOE an Application for General Permit to Discharge Stormwater Associated with Industrial Activity. WDOE granted Defendant coverage under the General Permit for Defendant's Moon Island facility under Permit Number WAR011407.  WDOE previously granted Defendant coverage under an earlier version of the General Permit for Defendant's Moon Island facility under Permit Number SO3011407.

17.     Defendant's Moon Island facility is engaged in industrial activity and discharges stormwater and other pollutants to Grays Harbor.

18.     Discharges from Defendant's Moon Island facility contribute to the polluted conditions of the waters of the State, including causing or contributing to violations of aesthetic and recreational water quality standards in Grays Harbor.  Discharges from Defendant's facility contribute to the ecological impacts that result from the polluted state of these waters and to Plaintiff's and their members' injuries resulting therefrom.

19.     The vicinity of the Moon Island facility and the receiving waters are used by the citizens of Washington and visitors, as well as at least one of Plaintiff's members, for recreational activities, including boating, biking, fishing and nature watching.  Plaintiff's member(s) also derive(s) aesthetic benefits from the receiving waters.  Plaintiff's and its members' enjoyment of these activities and waters is diminished by the polluted state of the receiving waters and by Defendant's contributions to such polluted state.

COMPLAINT - 6

20.     Defendant has violated the General Permit and Sections 301(a) and 402 of the CWA, 33 U.S.C. §§ 1311(a) and 1342, by discharging pollutants in violation of an NPDES Permit.  These are violations of "effluent standards or limitations" under 33 U.S.C. § 1365. Defendant's violations of the General Permit and the CWA are set forth in full in sections I through VII of the Notice Letter, attached hereto as <u>Exhibit 1</u>, and are incorporated herein by this reference.  In particular and among the other violations described in the Notice Letter, Defendant has failed to monitor distinct points of discharge, failed to monitor discharges at all in certain periods, failed to prevent illicit discharges of wood chips to Grays Harbor, failed to analyze for all required parameters, failed to conduct required inspections, and failed to implement best management practices to control stormwater quality as required by the General Permit.

21.     Defendant has not developed and/or implemented a SWPPP in accordance with the requirements of the General Permit.  Defendant's SWPPP does not specify all of the BMPs that are necessary to provide AKART and to ensure that discharges do not cause or contribute to violations of water quality standards, and does not include all of the specific requirements of the General Permit, including certain mandatory BMPs and measures to identify and eliminate illicit discharges.  Defendant's SWPPP also does not provide a compliant discharge sampling plan, does not include a complete site map that identifies each discharge point and other mandatory information, and Defendants' SWPPP is not properly certified.  These SWPPP requirements and violations are described in detail in section II of the Notice Letter, attached hereto as Exhibit 1, and are incorporated herein by this reference.

22.     Defendant has violated the monitoring requirements in the General Permit. Defendant has failed to collect stormwater samples and/or submit discharge monitoring reports during all quarters as required by the General Permit.

COMPLAINT - 7

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

23.     Defendant failed to collect stormwater samples for Outfall 001 for the following monitoring periods: 2nd quarter of 2016, 3rd quarter of 2016, 3rd quarter of 2017, 2nd quarter of 208, 3rd quarter of 2018, 1st quarter of 2019, 2nd quarter of 2019, 3rd quarter of 2019, 4th quarter of 2019, 1st quarter of 2020,  and 2nd quarter of 2020.  These monitoring requirements and violations are described in section III of the Notice Letter, attached hereto as Exhibit 1, and are incorporated herein by this reference.

24.     Defendant failed to collect stormwater samples and/or to submit DMRs for Outfall 002 for any quarterly monitoring period in the last five years. These monitoring requirements and violations are described in section III of the Notice Letter, attached hereto as Exhibit 1, and are incorporated herein by this reference.

25.     Defendant failed to collect stormwater samples and/or to submit DMRs for Outfall 003 for any quarterly monitoring period in the last five years.  These monitoring requirements and violations are described in section III of the Notice Letter, attached hereto as Exhibit 1, and are incorporated herein by this reference.

26.     Defendant failed to collect stormwater samples and/or to submit DMRs for one or more points of discharge from the Moon Island facility dock and gangway leading to the dock. Defendant also failed to collect stormwater samples and/or to submit DMRs for one or more other unnamed discharge points where stormwater runs off Defendant's facility from the southwest corner of the facility, from the east side of the facility and from the northern log storage area of the facility.  These monitoring requirements and violations are described in section III of the Notice Letter, attached hereto as Exhibit 1, and are incorporated herein by this reference.  For at least the last five years, Defendant has failed to sample each distinct point of discharge off-site, as the Permit requires.

COMPLAINT - 8

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

27.     Defendant has not conducted and/or documented inspections as required by the General Permit and Defendant's SWPPP.  Defendant has not conducted and/or documented inspections for each drainage area as required.  These inspection requirements and violations are described in detail in section III.B of the Notice Letter, attached hereto as Exhibit 1, and are incorporated herein by this reference.

28.     Defendant has violated the recordkeeping requirements of the General Permit.  The recordkeeping requirements are outlined in Condition S9.D of the General Permit.  The General Permit requires the retention of the records identified for a minimum of five (5) years.  Defendant is in violation of this condition by failing to retain the sampling documentation of Condition S4.B.4, the inspection documentation of S7, equipment calibration records, all BMP maintenance records, all original recordings for continuous sampling instrumentation, copies of all laboratory reports as described in S4.B.5, all DMRs, or copies of any other reports required by the Permit for the specified five-year period.

29.     Defendant has violated the reporting requirements of the General Permit.  For example, Defendant submitted an annual report that did not include all the required elements.  These reporting requirements and violations are described in section V of the Notice Letter, attached hereto as Exhibit 1, and are incorporated herein by this reference.

30.     Defendant has violated the General Permit's prohibition on illicit discharges.  For example, Defendant discharged illicit discharges from the Moon Island facility on or around May 16, 2019, November 12, 2019, and March 2, 2020, among other days, including but not limited to wood chips, wood dust and other bulk materials.  Defendant has discharged such illicit discharges on each and every day over the past five years Defendant conducted wood chip loading or unloading at the Moon Island facility wharf or otherwise used the over-water

COMPLAINT - 9

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

conveyor belt system leading to the wharf.  These illicit discharges are described in section IV.A of the Notice Letter, attached hereto as Exhibit 2, and are incorporated herein by this reference.

31.     Defendant discharges wood chips, wood dust and other material handled at the Moon Island facility, all pollutants under the CWA, to Grays Harbor via point source without NPDES Permit authorization.  Defendant discharges pollutants from the facility conveyor system and/or from other equipment used to load or unload material at the facility wharf.  These unpermitted discharge violations are described in section IV.B of the Notice Letter, attached hereto as Exhibit1, and are incorporated herein by this reference.

32.     A significant penalty should be imposed against Defendant pursuant to the penalty factors set forth in 33 U.S.C. § 1319(d).

33.     Defendant's violations of the CWA degrade the environment and the water quality of the receiving water bodies.

34.     Defendant's violations were avoidable had Defendant been diligent in overseeing facility operations and maintenance.

35.     Defendant has benefited economically as a consequence of its violations and its failure to implement improvements at the facility.

## VI.     CAUSE OF ACTION

36.     The preceding paragraphs and the allegations in sections I through VII of the Notice Letter are incorporated herein.

37.     Defendant's violations of its NPDES permit described herein and in the Notice Letter constitute violations of "effluent standard(s) or limitation(s)" as defined by section 505 of the Clean Water Act, 33 U.S.C. § 1365.

COMPLAINT - 10

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

38.     The violations committed by Defendant are ongoing or are reasonably likely to continue to occur.  Any and all additional violations of the General Permit and the CWA which occur after those described in Plaintiff's Notice Letter but before a final decision in this action should be considered continuing violations subject to this Complaint.

39.     Without the imposition of appropriate civil penalties and the issuance of an injunction, Defendant is likely to continue to violate the General Permit and the CWA to the further injury of the Plaintiff, its member(s) and others.

40.     A copy of this Complaint was served upon the Attorney General of the United States and the Administrator of the USEPA as required by 33 U.S.C. § 1365(c)(3).

## VII.    RELIEF REQUESTED

Wherefore, Plaintiff respectfully requests that this Court grant the following relief:

A.     Issue a declaratory judgment that Defendant has violated and continues to be in violation of the General Permit and Sections 301 and 402 of the Clean Water Act, 33 U.S.C. §§ 1311 and 1342;

B.     Enjoin Defendant from operating its facility in a manner that results in further violations of the General Permit or the Clean Water Act;

C.     Order Defendant to immediately implement a Storm Water Pollution Prevention Plan that is in compliance with the General Permit, and to provide Plaintiff with a copy of this Plan;

D.     Order Defendant to allow Plaintiff to participate in the development and implementation of Defendant's Storm Water Pollution Prevention Plan;

E.     Order Defendant to provide Plaintiff, for a period beginning on the date of the Court's Order and running for one year after Defendant achieves compliance with all of the

COMPLAINT - 11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29

conditions of the General Permit, with copies of all reports and other documents which

Defendant submits to the USEPA or to the WDOE regarding Defendant's coverage under the

General Permit at the time it is submitted to these authorities;

F.      Order Defendant to take specific actions to remediate the environmental harm

caused by its violations;

G.      Order Defendant to pay civil penalties of $55,800.00 per day of violation for each

violation committed by Defendant since November 2, 2015 and $37,500.00 per day of violation

for each violation committed by Defendant before November 2, 2015 pursuant to Sections

309(d) and 505(a) of the CWA, 33 U.S.C. §§ 1319(d) and 1365(a), and 40 C.F.R. § 19;

H.      Award Plaintiff their litigation expenses, including reasonable attorneys' and

expert witness fees, as authorized by Section 505(d) of the CWA, 33 U.S.C. § 1365(d); and

I.      Award such other relief as this Court deems appropriate.


RESPECTFULLY SUBMITTED this 11th day of September, 2020.

Smith & Lowney, pllc

By: s/Marc Zemel
Marc Zemel, WSBA #44325
Attorneys for Plaintiff
2317 E. John St.,
Seattle, WA 98112
Tel: (206) 860-2124
Fax: (206) 860-4187
E-mail: marc@smithandlowney.com

COMPLAINT - 12

EXHIBIT 1

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883, FAX (206) 860-4187

June 23, 2020

**Via Certified Mail - Return Receipt Requested**

Managing Agent
Willis Enterprises, Inc.
400 Airport Way SW
Hoquiam, WA 98550

Managing Agent
Willis Enterprises, Inc.
P.O Box 457
Oakville, WA 98568

Re:   **NOTICE OF INTENT TO SUE UNDER THE CLEAN WATER ACT AND
REQUEST FOR COPY OF STORMWATER POLLUTION PREVENTION
PLAN**

Dear Managing Agent:

We represent Waste Action Project, P.O. Box 9281, Covington, WA 98042, (206) 849-5927.  Any response or correspondence related to this matter should be directed to us at the letterhead address.  This letter is to provide you with sixty days notice of Waste Action Project's intent to file a citizen suit against Willis Enterprises, Inc. ("Willis") under section 505 of the Clean Water Act ("CWA"), 33 U.S.C. § 1365, for the violations described below. This letter is also a request for a copy of the complete and current stormwater pollution prevention plan ("SWPPP") required by Willis's National Pollution Discharge Elimination System ("NPDES") permit.

Willis was granted coverage under Washington's Industrial Stormwater General Permit ("ISGP") issued by the Washington Department of Ecology ("Ecology") effective January 2, 2015 and expired on December 31, 2019 under NPDES No. WAR011407 (the "2015 Permit").  Ecology granted Willis coverage under the current iteration of the ISGP effective January 1, 2020, and set to expire on December 31, 2024 (the "2020 Permit") and maintains the same permit number, WAR011407.

Willis has violated and continues to violate the CWA (see Sections 301 and 402 of the CWA, 33 U.S.C. §§ 1311 and 1342) and the terms and conditions of the 2010 Permit and the 2015 Permit (collectively, the "Permits") with respect to operations of, and discharges of stormwater and pollutants from, its facility located at or about 400 Airport Way SW, Hoquiam, WA 98550 (the "facility") as described herein, to Inner Grays Harbor, the Chehalis

Notice of Intent to Sue - 1

River and the Grays Harbor National Wildlife Refuge.  The facility subject to this notice includes any contiguous or adjacent properties owned or operated by Willis.

Willis has a long history of CWA violations at the facility, for which Waste Action Project previously sued Willis in 2012.  That prior citizen suit concluded with a Consent Decree in W.D. Wash. case no. 3:12-cv-05096-BHS, which terminated on or about October 21, 2015.  It is inexcusable that Willis is again violating the Permit at the facility.

## I.   COMPLIANCE WITH STANDARDS.

Condition S10.C of the Permits requires Willis to apply all known and reasonable methods of prevention, control and treatment ("AKART") to all discharges, including preparation and implementation of an adequate SWPPP and best management practices ("BMPs").  Willis has violated and continues to violate these conditions by failing to apply AKART to its discharges or to implement an adequate SWPPP and BMPs as evidenced by the illicit discharges and lack of BMP implementation across the entire facility, as described below in this notice of intent to sue.

Condition S1.A of the Permits requires that all discharges and activities authorized be consistent with the terms and conditions of the permits.  Willis has violated these conditions by discharging and acting inconsistent with the conditions of the Permits as described in this notice of intent to sue.

## II.   STORMWATER POLLUTION PREVENTION PLAN VIOLATIONS.

Willis is in violation of the Permits' SWPPP provisions as follows:

1.  Condition S3.A of the Permits requires Willis to develop and implement a SWPPP as specified.  Condition S3.A.2 of the 2015 Permit and S3.A.1 of the 2020 Permit require the SWPPP to specify BMPs necessary to provide AKART and ensure that discharges do not cause or contribute to violations of water quality standards.  Willis has violated these requirements of the Permits each and every day during the last five years and continues to violate them as it has failed to prepare and/or implement a SWPPP that includes AKART BMPs and BMPs necessary to comply with state water quality standards.

2.  Condition S3.A of the Permits requires Willis to have and implement a SWPPP that is consistent with permit requirements, fully implemented as directed by permit conditions, and updated as necessary to maintain compliance with permit conditions.  Willis has violated these requirements of the Permits each and every day during the last five years and continues to violate them because its SWPPP is not consistent with permit requirements, has not been fully implemented and has not been updated as necessary.

3.  The SWPPP fails to satisfy the requirements of Condition S3 of the Permits because it does not adequately describe BMPs.  Condition S3.B.4 of the Permits require that the SWPPP include a description of the BMPs that are necessary for the facility to eliminate or reduce the potential to contaminate stormwater.  Condition S3.A.3 of the 2015 Permit and

S3.A.2 of the 2020 Permit require that the SWPPP include BMPs consistent with approved stormwater technical manuals or document how stormwater BMPs included in the SWPPP are demonstratively equivalent to the practices contained in the approved stormwater technical manuals, including the proper selection, implementation, and maintenance of all applicable and appropriate BMPs. *See Stormwater Management Manual for Western* Washington, July 2019, https://fortress.wa.gov/ecy/ezshare/wq/Permits/Flare/2019SWMMWW/Content/Resour ces/DocsForDownload/2019SWMMWW.pdf. Willis's SWPPP does not comply with these requirements because it does not adequately describe BMPs and does not include BMPs consistent with approved stormwater technical manuals nor does it include BMPs that are demonstratively equivalent to such BMPs with documentation of BMP adequacy. For example, Willis's SWPPP fails to provide BMPs to prevent stormwater contamination at its wharf and along the belt conveyor and to prevent direct discharges of wood chips and other material from the conveyor and wharf, among other missing mandatory BMPs that are necessary to eliminate or reduce stormwater contamination.

4. Willis's SWPPP fails to satisfy the requirements of Condition S3.B.2 of the Permits because it fails to include a facility assessment as mandated. The SWPPP fails to include an adequate facility assessment because it does not describe all the industrial activities conducted at the site, the complete general layout of the facility including buildings and storage of raw materials, the flow of goods and materials through the facility, including through the wharf and conveyor portion of the facility, regular business hours and seasonal variations in business hours or in industrial activities as required.

5. Willis's SWPPP fails to satisfy the requirements of Condition S3.B.1 of the Permits because it does not include a site map that accurately identifies all significant features, including the wharf and northern log storage area, ponds, the stormwater drainage and discharge structures, the stormwater drainage areas for each stormwater discharge point off-site, a unique identifying number for each discharge point, each sampling location with a unique identifying number, paved areas and buildings, areas of pollutant contact associated with specific industrial activities, conditionally approved non-stormwater discharges, surface water locations, areas of existing and potential soil erosion, vehicle maintenance areas, and lands and waters adjacent to the site that may be helpful in identifying discharge points or drainage routes.

6. Willis's SWPPP fails to comply with Condition S3.B.2.b of the Permits because it does not include an inventory of industrial activities that identifies all areas associated with industrial activities that have been or may potentially be sources of pollutants as required, including the belt conveyor and wharf. The SWPPP does not identify all areas associated with loading and unloading of dry bulk materials or liquids, outdoor storage of materials or products, outdoor manufacturing and processing, onsite dust or particulate generating processes, on-site waste treatment, storage, or disposal, vehicle and equipment fueling, maintenance, and/or cleaning, roofs or other surfaces exposed to air emissions from a manufacturing building or a process area, and roofs or other surfaces composed of materials that may be mobilized by stormwater as required by these conditions.

7. Willis's SWPPP does not comply with Condition S3.B.2.c of the Permits because it does not include an adequate inventory of materials. The SWPPP does not include an inventory of materials that lists the types of materials handled at the site that potentially may be exposed to precipitation or runoff and that could result in stormwater pollution, a short narrative for material describing the potential for the pollutants to be present in stormwater discharge that is updated when data becomes available to verify the presence or absence of the pollutants, a narrative description of any potential sources of pollutants from past activities, materials and spills that were previously handled, treated, stored, or disposed of in a manner to allow ongoing exposure to stormwater as required. The SWPPP does not include the method and location of on-site storage or disposal of such materials and a list of significant spills and significant leaks of toxic or hazardous pollutants as these permit conditions require.

8. Willis's SWPPP does not comply with Condition S3.B.3 of the Permits because it does not identify specific individuals by name or title whose responsibilities include SWPPP development, implementation, maintenance and modification.

9. Condition S3.B.4 of the Permits requires that permittees include in their SWPPPs and implement mandatory BMPs subject to the same conditions. Willis is in violation of this requirement because it has failed to include in its SWPPP and implement the mandatory BMPs of the Permits.

10. Willis's SWPPP does not comply with Condition S3.B.4.b.i of the Permits because it does not include required operational source control BMPs in the following categories: good housekeeping (including definition of ongoing maintenance and cleanup of areas that may contribute pollutants to stormwater discharges, and a schedule/frequency for each housekeeping task); preventive maintenance (including BMPs to inspect and maintain stormwater drainage, source controls, treatment systems, and plant equipment and systems, and the schedule/frequency for each task); spill prevention and emergency cleanup plan (including BMPs to prevent spills that can contaminate stormwater, for material handling procedures, storage requirements, cleanup equipment and procedures, and spill logs); employee training (including an overview of what is in the SWPPP, how employees make a difference in complying with the SWPPP, spill response procedures, good housekeeping, maintenance requirements, and material management practices, how training will be conducted, the frequency/schedule of training, and a log of the dates on which specific employees received training); inspections and recordkeeping (including documentation of procedures to ensure compliance with permit requirements for inspections and recordkeeping, identification of personnel who conduct inspections, provision of a tracking or follow-up procedure to ensure that a report is prepared and appropriate action taken in response to visual monitoring, definition of how Willis will comply with signature and record retention requirements, and certification of compliance with the SWPPP and Permit).

11. Willis's SWPPP does not comply with Condition S3.B.4.b.i.7 of the Permits because it does not include measures to identify and eliminate the discharge of process wastewater, domestic wastewater, noncontact cooling water, and other illicit discharges to stormwater sewers, or to surface waters and ground waters of the state.

12. Willis's SWPPP does not comply with Condition S3.B.4.b.ii of the Permits because it does not include required structural source control BMPs to minimize the exposure of manufacturing, processing, and material storage areas to rain, snow, snowmelt, and runoff. Willis's SWPPP does not comply with Condition S3.B.4.b.iii of the Permits because it does not include treatment BMPs as required.

13. Willis's SWPPP fails to comply with Condition S3.B.4.b.v of the Permits because it does not include BMPs to prevent the erosion of soils or other earthen materials and prevent off-site sedimentation and violations of water quality standards.

14. Willis's SWPPP fails to satisfy the requirements of Condition S3.B.5 of the Permits because it fails to include a stormwater sampling plan as required. The SWPPP does not include a sampling plan that: identifies all points of discharge to surface waters, storm sewers, or discrete ground water infiltration locations; documents why each discharge point is not sampled; identifies each sampling point by its unique identifying number; identifies staff responsible for conducting stormwater sampling; specifies procedures for sampling collection and handling; specifies procedures for sending samples to the a laboratory; identifies parameters for analysis, holding times and preservatives, laboratory quantization levels, and analytical methods, and that specifies the procedure for submitting the results to Ecology.

## III.   MONITORING AND REPORTING VIOLATIONS.

### A.   Failure to Collect Quarterly Samples.

Condition S4.B of the Permits requires Willis to collect a sample of its stormwater discharge once during every calendar quarter. Conditions S3.B.2.c of the 2015 Permit and S4.B.3.a of the 2020 Permit require Willis to collect stormwater samples at each distinct point of discharge offsite except for substantially identical outfalls, in which case only one of the substantially identical outfalls must be sampled. These conditions set forth sample collection criteria, but require the collection of a sample even if the criteria cannot be met. The facility has several distinct points of discharge off-site, including: Outfall 1, Outfall 2, Outfall 3 and other points of discharge from the southwest corner of the facility, from the east side of the facility, from the northern log storage area, from one or more locations discharging stormwater originating from the gangway leading to the wharf and the wharf itself.

Willis violated these requirements by failing to collect stormwater samples at any of its discharge points during the 2nd quarter of 2016, 3rd quarter of 2016, 3rd quarter of 2017, 2nd quarter of 2018, 3rd quarter of 2018, 1st quarter of 2019, 2nd quarter of 2019, 3rd quarter of 2019, 4th quarter of 2019 and 1st quarter of 2020.

Willis has also violated and continues to violate these conditions because it does not sample each distinct point of discharge off-site. These violations have occurred and continue to occur each and every quarter during the last five years that Willis was and is required to sample its stormwater discharges, including the quarters in which it collected stormwater

discharge samples from some, but not each, point of discharge.  These violations will continue until Willis commences monitoring all distinct points of discharge.

> **B.     Failure to Comply with Visual Monitoring Requirements.**

Conditions S7.A and B of the Permits require that monthly visual inspection be conducted at the facility by qualified personnel.  Each inspection is to include observations made at stormwater sampling locations and areas where stormwater associated with industrial activity is discharged, observations for the presence of floating materials, visible oil sheen, discoloration, turbidity, odor, etc. in the stormwater discharges, observations for the presence of illicit discharges, a verification that the descriptions of potential pollutant sources required by the permit are accurate, a verification that the site map in the SWPPP reflects current conditions, and an assessment of all BMPs that have been implemented (noting the effectiveness of the BMPs inspected, the locations of BMPs that need maintenance, the reason maintenance is needed and a schedule for maintenance, and locations where additional or different BMPs are needed).

Condition S7.C of the Permits requires that Willis record the results of each inspection in an inspection report or checklist that is maintained on-site and that documents the observations, verifications, and assessments required.  The report/checklist must include the time and date of the inspection, the locations inspected, a statement that, in the judgment of the person conducting the inspection and the responsible corporate officer, the facility is either in compliance or out of compliance with the SWPPP and the Permits, a summary report and schedule of implementation of the remedial actions that Willis plans to take if the site inspection indicates that the facility is out of compliance, the name, title, signature and certification of the person conducting the facility inspection, and a certification and signature of the responsible corporate officer or a duly authorized representative.

Willis is in violation of these requirements of Condition S7 of the Permits because, during the last five years, it has failed to conduct each of the requisite visual monitoring and inspections, including in all areas of the facility, failed to prepare and maintain the requisite inspection reports or checklists, and failed to make the requisite certifications and summaries.

## IV.     UNLAWFUL DISCHARGES.

Over the last five years, Willis has discharged wood chips, wood dust and other bulk material directly to Grays Harbor each and every time it used the wharf and/or over-water conveyor belts to transport wood chips or other bulk materials.  Willis discharged these pollutants from the conveyor belt itself, from loaders or other machinery used in the transportation of material to or from vessels or barges moored at the wharf, and from the wharf itself, either by spilling the material or by washing, sweeping or shoveling excess material into the Bay.

### A. Illicit and Prohibited Discharges.

Condition S5.E of the Permits prohibits the discharge of process wastewater (including stormwater that comingles with process wastewater) and illicit discharges. Appendix 2 to the Permits defines "illicit discharges" as "any discharge that is not composed entirely of stormwater," with some limited exceptions not relevant here. Condition S5.F of the Permits requires Willis to manage stormwater to prevent the discharge of synthetic, natural or processed oil or oil containing products as identified by an oil sheen, and trash and floating debris, prohibiting those discharges. Willis's discharges of wood chips, wood dust and other bulk materials violate these Permit conditions. These prohibited discharges occurred each and every day over the past five years Willis used the wharf and/or over-water conveyor belt to transport materials to or from the facility and are reasonably likely to continue to occur.

Condition S7.B.3.b of the Permits also requires Willis to eliminate illicit discharges within 30 days of discovery; and Condition S3.B.4.b.i.7 of the Permits require Willis's SWPPP to include measures to identify and eliminate illicit discharges to surface waters. Willis violated these requirements by failing to eliminate its illicit discharges altogether over the last five years.

Additionally, Condition S7.B.3.a of the Permits requires Willis to notify the Department of Ecology within seven days of any discovery of an illicit discharge. Willis violated this requirement by failing to notify Ecology about its illicit discharges within seven days of each occurrence over the past five years.

### B. Unpermitted Discharges.

The Permits authorize only the discharges of stormwater and pollutants contained in stormwater. Willis does not possess and has never possessed an NPDES permit for its non-stormwater direct discharges of wood chips, wood dust or other bulk material to waters of the state. Discharging loose wood chips, dust and other bulk material directly to Grays Harbor from the facility conveyor system and other machinery, and sweeping, shoveling or otherwise removing remaining wood chips and dust into Grays Harbor are all unpermitted point-source discharges of pollutants to surface waters. These point source discharges violate the Clean Water Act's § 301(a), 33 U.S.C. § 1311(a), prohibition on pollutant discharges. These violations occurred each and every day over the past five years on which Willis transported material to or from vessels at the wharf or otherwise used the overwater conveyor belt to transport material and are reasonably likely to continue to occur whenever those activities occur going forward.

### V. VIOLATIONS OF THE ANNUAL REPORT REQUIREMENTS.

Condition S9.B of the 2015 Permit and S9.C of the 2020 Permit require Willis to submit an accurate and complete annual report to Ecology no later than May 15 of each year. The annual report must include a description of problems and the dates they were discovered,

and corrective action documentation as required in Conditions S8.B – D of the Permits, among other information.

Willis has violated this condition.  The annual report submitted by Willis for 2019 (in January 2020) does not include the required information.  Specifically, the report does not describe all of the water quality problems identified, including those related to rogue woodchips under the facility's conveyor belt and woodchips falling out of the conveyor belt as discussed in a November 2019 and May 2019 inspection report by Ecology, and the lack of wharf discharge monitoring, as documented in the May 2019 inspection report.

## VI.     VIOLATIONS OF THE RECORDKEEPING REQUIREMENTS.

### A.     Failure to Record Information.

Condition S4.B.3 of the Permits requires Willis record and retain specified information for each stormwater sample taken, including the sample date and time, a notation describing if Willis collected the sample within the first 12 hours of stormwater discharge event, an explanation of why Willis could not collect a sample within the first 12 hours of a stormwater discharge event, the sample location, method of sampling and of preservation, and the individual performing the sampling.  Willis is in violation of these conditions as it has not recorded each of these specified items for each sample taken during the last five years.

### B.     Failure to Retain Records.

Condition S9.C of the 2015 Permit and S9.D of the 2020 Permit require Willis to retain for a minimum of five years a copy of the current Permit, a copy of Willis's coverage letter, records of all sampling information, inspection reports including required documentation, any other documentation of compliance with permit requirements, all equipment calibration records, all BMP maintenance records, all original recordings for continuous sampling instrumentation, copies of all laboratory results, copies of all required reports, and records of all data used to complete the application for the Permit.  Willis is in violation of these conditions because it has failed to retain records of such information, reports, and other documentation during the last five years.

## VII.    FAILURE TO REPORT PERMIT VIOLATIONS.

Condition S9.E of the 2015 Permit and S9.F of the 2020 Permit require Willis to take certain actions in the event Willis is unable to comply with any of the terms and conditions of the Permits which may endanger human health or the environment, or exceed any numeric effluent limitation in the permit.  In such circumstances, Willis must immediately take action to minimize potential pollution or otherwise stop the noncompliance and correct the problem, and Willis must immediately notify the appropriate Ecology regional office of the failure to comply.  Willis must then submit a detailed written report to Ecology, including specified details, within 5 days of the time Willis became aware of the circumstances unless Ecology requests an earlier submission.

Willis routinely violates these requirements, including each and every time Willis discharges illicit discharges of wood chips and dust as described in section IV of this notice of intent to sue, and each and every time Willis failed to obtain representative stormwater discharge samples, among others.  These violations may endanger human health or the environment.

## VIII.   REQUEST FOR SWPPP.

Pursuant to Condition S9.G of the 2020 Permit, Waste Action Project hereby requests that Willis Enterprises, Inc. provide a copy of, or access to, its SWPPP complete with all incorporated plans, monitoring reports, checklists, and training and inspection logs.  The copy of the SWPPP and any other communications about this request should be directed to the undersigned at the letterhead address.

Should Willis fail to provide the requested complete copy of, or access to, its SWPPP as required by Condition S9.G of the 2020 Permit, it will be in violation of that condition, which violation shall also be subject to this notice of intent to sue and any ensuing lawsuit.

## IX.   CONCLUSION.

The above-described violations reflect those indicated by the information currently available to Waste Action Project.  These violations are ongoing.  Waste Action Project intends to sue for all violations, including those yet to be uncovered and those committed after the date of this Notice of Intent to Sue.

Under Section 309(d) of the CWA, 33 U.S.C. § 1319(d), each of the above-described violations subjects the violator to a penalty of up to $37,500 per day for each violation that occurred through November 2, 2015, and $55,800 per day for each violation that occurred thereafter.  In addition to civil penalties, Waste Action Project will seek injunctive relief to prevent further violations under Sections 505(a) and (d) of the CWA, 33 U.S.C. § 1365(a) and (d), and such other relief as is permitted by law.  Also, Section 505(d) of the CWA, 33 U.S.C. § 1365(d), permits prevailing parties to recover costs, including attorney's fees.

Waste Action Project believes that this NOTICE OF INTENT TO SUE sufficiently states grounds for filing suit.  We intend, at the close of the 60-day notice period, or shortly thereafter, to file a citizen suit against Willis Enterprises, Inc. under Section 505(a) of the Clean Water Act for violations.

During the 60-day notice period, we would be willing to discuss effective remedies for the violations addressed in this letter and settlement terms.  If you wish to pursue such discussions in the absence of litigation, we suggest that you initiate those discussions within 10 days of receiving this notice so that a meeting can be arranged and so that negotiations may be completed promptly.  We do not intend to delay the filing of a complaint if discussions are continuing when the notice period ends.

Very truly yours,

Sᴍɪᴛʜ & Lᴏᴡɴᴇʏ, PLLC


By: *s/Marc Zemel*


cc:     Andrew Wheeling, Acting Administrator, U.S. EPA
        Chris Hladick, Region 10 Administrator, U.S. EPA
        Laura Watson, Director, Washington Department of Ecology
        Ingram Zelasko & Goodwin Registered Agents Inc., Registered Agent (120 E 1ˢᵗ St.,
        Aberdeen, WA 98520-5246)